IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE WAUKEEN Q. MCCOY

No. C 16-01536 WHA
Br. No. 14-30381 HLB

**ORDER AFFIRMING DECISION OF BANKRUPTCY COURT**

/

## INTRODUCTION

This is an appeal from the bankruptcy court's order approving a compromise of claims pursuant to Federal Rule of Bankruptcy Procedure 9019 and from its order denying reconsideration thereof. The bankruptcy court's decision as to both orders is **AFFIRMED**.

## STATEMENT

Since December 2007, debtor and appellant Waukeen McCoy owned real property located on Buena Vista Avenue East in San Francisco, California, subject to a senior deed of trust for approximately two million dollars held by Chevy Chase Bank (and subsequently acquired by Capital One), and a junior deed of trust for approximately $900,000 held by Kenneth Page (from whom McCoy had purchased the subject property). In 2009, McCoy defaulted on his payments. A trial lawyer himself, McCoy filed two lawsuits in 2010 and 2011, respectively, against Page and other defendants in state court, asserting various causes of action in connection with and seeking to enjoin foreclosure of the subject property. Both lawsuits settled in September 2012.

In March 2014, McCoy filed for Chapter 13 bankruptcy. He identified his primary residence as another address — different from the subject property — located on Clayton Street in San Francisco, California. He also valued the subject property at $3.5 million but indicated that it was encumbered by liens in excess of $5.9 million. On June 5, 2014, McCoy successfully moved to convert his bankruptcy case to Chapter 11. In April 2015, the Trustee successfully moved to convert the case to Chapter 7.

On June 3, 2014, Page moved *unopposed* for relief from the bankruptcy stay so he could foreclose on the subject property. The bankruptcy court granted the motion. On August 7, 2014, Page sold the subject property at a foreclosure sale to Craig Lipton. Lipton paid $1.2 million, approximately $900,000 of which went to pay off the junior deed of trust, with a resulting surplus to the estate of approximately $300,000. Lipton acquired the subject property subject to the senior deed of trust, encumbered at approximately $2.3 million. In other words, Lipton not only paid $1.2 million but also assumed liability in the amount of approximately $2.3 million as consideration for the subject property. Lipton, who worked in real estate, remodeled the subject property and resold it in mid-November 2014 for $5.2 million. He used part of the resale proceeds to pay off the senior deed of trust.

On November 7, 2014, McCoy sued Lipton in state court, seeking to enjoin the foreclosure sale of the subject property and asserting causes of action for wrongful eviction, among other things. McCoy theorized that Lipton and Page had colluded to suppress the sale price of the subject property. In October 2015, the Trustee, describing the claims against Lipton as "highly speculative at best" (Dkt. No. 5-4 at 7), moved to compromise the claims for $30,000 subject to overbids. Lipton submitted a declaration in support of the Trustee's motion, claiming that the subject property appeared vacant at the time of the foreclosure sale, that he and Page did not know each other prior to the sale, and that multiple bidders participated in the sale — in short, that no impropriety had occurred with respect to the sale.

McCoy opposed the Trustee's motion to compromise the state court claims against Lipton but did not bid for the claims himself. In opposing the motion, McCoy claimed that the subject property's fair market value exceeded five million dollars. He also protested the

Trustee's reliance on Lipton's declaration because Lipton had pled guilty in 2011 to rigging other foreclosure sales. At the hearing on the motion on November 19, 2015, the bankruptcy court refused to entertain the latter argument, noting that "Federal Rule of Evidence 404(b) prohibits introduction of evidence of a prior conviction of a crime as evidence of someone's current character or actions in conformity with prior criminal acts" (Dkt. No. 5-12 at 5:18–6:9). After hearing from both sides, the bankruptcy court granted the Trustee's motion and approved the compromise.

McCoy moved for reconsideration. At the hearing on that motion on March 3, 2016, McCoy again raised the issue of Lipton's prior conviction, arguing that "evidence of a felony is admissible to show that in this case Mr. Lipton had motive, opportunity, intent, and plan to rig the foreclosure sale of [the subject property] and take the monies, the 1.8 million dollars . . ." (Dkt. No. 6-4 at 3:21–4:11). The bankruptcy court again rejected McCoy's argument and, after hearing from both sides, denied his motion for reconsideration.

McCoy now appeals from both the bankruptcy court's order granting the Trustee's motion to compromise and its order denying McCoy's motion for reconsideration. This order follows full briefing.[*]

**ANALYSIS**

McCoy's sole argument in his opening brief is that the bankruptcy court committed reversible error by refusing to consider evidence of Lipton's prior conviction in deciding whether to approve the Trustee's proposed compromise of the claims against him (Dkt. No. 12 at 2). A bankruptcy court's evidentiary rulings are reviewed for abuse of discretion and should be reversed only for prejudicial error. *In re Hudson*, 504 B.R. 569, 573 (B.A.P. 9th Cir. 2014).

The gravamen of McCoy's argument seems to be that, had the bankruptcy court taken into account evidence of Lipton's prior conviction, it would have found that McCoy's state court claims against Lipton were meritorious and that the value of said claims exceeded the $30,000 proposed by the Trustee. McCoy cites *United States v. Romero*, 282 F.3d 683 (9th Cir.

---

[*] The Trustee filed a responsive brief as the appellee. Lipton also filed a responsive brief as the real party in interest.

1    2002), for the proposition that evidence of prior acts may be admitted under Federal Rule of

2    Evidence 404(b) if (1) the evidence tends to prove a material point, (2) the other act is not too

3    remote in time, (3) the evidence is sufficient to support a finding that the person in question

4    committed the other act, and (4) the act is similar to the wrongdoing charged. *Id.* at 688.

5    McCoy contends the bankruptcy court erred by failing to apply this four-part test before

6    refusing to consider evidence of Lipton's prior conviction. True, FRE 404(b)(2) permits the

7    admission of character evidence for certain purposes. *Romero* also expressly acknowledged,

8    however, that under FRE 404(a) character evidence is "not admissible for the purpose of

9    proving action in conformity therewith on a particular occasion" (with some exceptions

10   inapplicable here). *Ibid.* Moreover, FRE 404(b)(1) prohibits admission of evidence "of a

11   crime, wrong, or other act . . . to prove a person's character in order to show that on a particular

12   occasion the person acted in accordance with the character."

13         Here, McCoy essentially proffered evidence of Lipton's prior conviction for foreclosure

14   rigging to show that Lipton had demonstrated a propensity to rig foreclosures, which in turn

15   tended to prove that Lipton also rigged the sale of the subject property. For example, at the

16   hearing on his motion for reconsideration, McCoy said, "Your Honor, I made the argument that

17   [Lipton's] a felon . . . and that the Court should consider the evidence of him rigging

18   foreclosure sales in the past . . . . I also know that there is more than just me as a vulnerable

19   homeowner who has been duped by Mr. Lipton" (Dkt. No. 6-4 at 4:14–4:21). McCoy

20   continued, "So here, what I'm saying is, my complaint against Mr. Lipton is that he conjured a

21   scheme with [Page] . . . . So what I'm saying is, [Lipton] has already been convicted of rigging

22   foreclosure sales at the detriment to homeowners in this community . . . . And this Court is

23   going to allow the Trustee to settle this claim for $30,000. Not only did he rig the foreclosure,

24   take the money from the estate . . . [b]ut the Trustee is still going to allow him to take off with

25   1.8 million dollars . . . . I just think that that is horrific. And I know I'm not the only one that

26   Lipton has duped" (*id.* at 6-4 at 5:16–6:19). In short, McCoy wanted the bankruptcy court to

27   infer that the state law claims alleging Lipton had rigged the sale of the subject property had

28   merit because Lipton was a bad person who rigged foreclosures. FRE 404 prohibits using

4

character evidence for such purposes. *E.g.*, *United States v. Lukashov*, 694 F.3d 1107, 1118 (9th Cir. 2012) (FRE 404(b) prohibits using "propensity evidence" to show that a person committed a bad act because they committed similar bad acts before).

At the hearing on the Trustee's motion to compromise, McCoy also asserted that Lipton's declaration had "no credibility whatsoever" because of his prior conviction, but as the bankruptcy court pointed out, it was up to the court, not McCoy, to make credibility determinations (Dkt. No. 5-12 at 6:20–7:6). The bankruptcy court had no obligation to accept McCoy's view that Lipton's declaration lacked any credibility because of his prior conviction. Moreover, on appeal, the bankruptcy court's factual findings are reviewed for clear error, *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007), and its findings of fact based on credibility warrant particular deference. *In re Hansen*, 368 B.R. 868, 875 (B.A.P. 9th Cir. 2007). Given this deferential standard of review, McCoy has not shown that the bankruptcy court clearly erred by refusing to discredit Lipton's declaration based on his prior conviction.

Then, in support of his motion for reconsideration, McCoy argued that FRE 404(b)(2) permitted the bankruptcy court to consider evidence of Lipton's prior conviction "to show that in this case Mr. Lipton had motive, opportunity, intent, and plan to rig the foreclosure sale of [the subject property]" (Dkt. No. 6-4 at 3:21–4:11). But McCoy did not discuss, either in his motion or at the hearing thereon, *how* he proffered the evidence for any specific proper purpose. For example, in a declaration in support of his motion for reconsideration, McCoy stated, "Lipton admitted to the rigging of Foreclosure sales in his plea agreement submitted to this Court. Craig Lipton was directly involved in the foreclosure sale in my real property in this Bankruptcy proceeding. This Court's application citing Federal Rule 404(b) as the basis to stop me from talking was an error. The Court refused to consider Federal Rule 404(b)(2) that Lipton had the motive, opportunity, intent and plan to rig the foreclosure sale of [the subject property]" (Dkt. No. 6-1 at 2). McCoy did not explain how Lipton's prior conviction tended to show motive, opportunity, intent, or plan. Instead, after expounding further on his theory that Lipton had a scheme to rig foreclosure sales in multiple cases, McCoy concluded, "Craig Lipton's fraud activities goes [*sic*] beyond this case" (*id.* at 3).

5

Similarly, at the hearing on his motion for reconsideration, McCoy repeated the phrase "motive, opportunity, intent, and plan" to fit the language of FRE 404(b)(2) (Dkt. No. 6-4 at 3:24–4:2, 13:16–13:23), but his substantive arguments made abundantly clear that the gravamen of his position remained unchanged. For example, McCoy told the bankruptcy court, "I'm not bringing [Lipton's prior conviction] in to show that he did commit the same felony of rigging in this particular case; what I'm saying under 404(B)(2), which provides that evidence of a felony is admissible to show that Lipton had motive, opportunity, intent and plan to rig the foreclosure sale, *which he in fact did of my home*, and he took that money without giving it to the creditors. So that evidence is admissible, not to show that he did it on this occasion, but to show that he had motive and intent. *And that's when you go back to the other cases*, homeowners that he rigged foreclosure sales in San Francisco and walked away with millions of dollars" (*id.* at 13:18–14:5 (emphasis added)). In short, McCoy's purported reasoning as to "motive, opportunity, intent, and plan" boiled down to his continued insistence on the impermissible inference that Lipton must have rigged the foreclosure sale of the subject property because his prior conviction showed he was a bad person who rigged foreclosures (*see id.* at 4:14–4:21, 5:2–7:20, 13:23–14:24, 16:7–16:19). *See also Lukashov*, 694 F.3d at 1118.

This order concludes the bankruptcy court did not abuse its discretion by refusing to consider evidence of Lipton's prior conviction as proof that Lipton had rigged the sale of the subject property. Instead, the bankruptcy court correctly insisted on looking to any actual evidence of bid-rigging in this particular case, of which there was none. This order therefore does not reach McCoy's further argument that the purported error was prejudicial.

\* \* \*

Despite the limited scope of McCoy's opening brief, both the Trustee and Lipton raise other issues in their own briefs. In turn, McCoy's reply brief raises a host of scattershot arguments, some of which reply to issues teed up for the first time in the Trustee's and Lipton's briefs. A reviewing court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *In re Jodoin*, 209 B.R. 132, 143 (B.A.P. 9th Cir. 1997) (quoting *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir.

1986)); *see also In re Lehtinen*, 332 B.R. 404, 410 (B.A.P. 9th Cir. 2005) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.") (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)).  And, in any event, none of the arguments made in McCoy's reply brief — which, to the extent comprehensible, generally challenge the bankruptcy court's orders granting the Trustee's motion to compromise and denying McCoy's motion for reconsideration — affect the outcome of this order.

        The bankruptcy court's decision to approve a compromise is reviewed for abuse of discretion.  *In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003) (citing *In re A & C Props.*, 784 F.2d 1377, 1380 (9th Cir. 1986)).  Its denial of a motion for reconsideration is also reviewed for abuse of discretion.  *Hansen*, 368 B.R. at 875 (citing *In re Weiner*, 161 F.3d 1216, 1217 (9th Cir. 1998)).  As stated, the bankruptcy court's factual findings are reviewed for clear error, *Fibercom*, 503 F.3d at 940, and its findings of fact based on credibility warrant particular deference.  *Hansen*, 368 B.R. at 875.  In evaluating a compromise proposed by the trustee, the bankruptcy court must consider (1) the probability of success in the litigation; (2) any difficulties in connection with collection; (3) the complexity of the litigation, and the expense, inconvenience and delay necessarily attending it; and (4) the interests of creditors.  *A & C*, 784 F.2d at 1381.

        Here, the bankruptcy court considered and discussed each *A & C* factor before deciding to approve the compromise (Dkt. No. 5-12 at 16:18–19:7).  On appeal, McCoy has shown no reason to disturb that decision.  His reply brief focuses on the first factor and contends that the claims against Lipton were worth more than the Trustee and the bankruptcy court gave them credit for because (1) McCoy still lived at the subject property, (2) McCoy "never valued the property at $3.5 million," and (3) Page and Lipton colluded to rig the sale of the subject property (Dkt. No. 20 at 2–9).  McCoy had already made these same arguments before the bankruptcy court.  He also admitted, however, that he had moved out of the subject property prior to the foreclosure sale so that realtors could show the premises (Dkt. Nos. 5-8 at 4; 5-12 at 4:23–5:5).  Moreover, he had consistently identified his address and primary residence as Clayton Street since he filed for bankruptcy (*e.g.*, Dkt. Nos. 3-2 at 1, 3-6 at 3).  As the

United States District Court
For the Northern District of California

7

1    bankruptcy court noted, McCoy himself had valued the subject property at $3.5 million under
2    penalty of perjury. Specifically, on Schedule A - Real Property, McCoy had identified the
3    subject property and listed "3,500,000.00" under the column titled, "Current Value of Debtor's
4    Interest in Property, without Deducting any Secured Claim or Exemption" (Dkt. No. 3-6 at 3).
5    And the bankruptcy court — after hearing McCoy's arguments to the contrary — disbelieved
6    his theory that Page and Lipton had colluded to rig the sale of the subject property. Based on
7    these and other factual findings, the bankruptcy court accepted the Trustee's position that the
8    probability of success on the claims against Lipton was "very low" because "there's no
9    evidence to support them" (Dkt. No. 5-12 at 16:18–17:21).

10   Neither McCoy nor his attorney objected when Page sought to lift the bankruptcy stay
11   so that he could foreclose on the subject property. Only after Lipton purchased the subject
12   property with an eye towards remodeling and reselling it did McCoy complain that the new
13   owner scored a profit. But Lipton also used part of the proceeds from the resale to pay off the
14   senior deed of trust on the subject property, such that he (eventually) paid out approximately
15   $3.5 million — matching McCoy's own valuation of the subject property — for his purchase
16   thereof. That being the case, and with no actual evidence of collusion or other impropriety in
17   connection with the foreclosure of the subject property, the likelihood of any jury finding for
18   McCoy on his state court claims against Lipton was so low — even if Lipton had been the Devil
19   himself — that the Trustee's decision to compromise those claims for $30,000 fell within the
20   range of reasonableness. In short, this order concludes that the bankruptcy court's factual
21   findings were not clearly erroneous, and that the bankruptcy court did not abuse its discretion in
22   approving the Trustee's proposed compromise.

23   McCoy also contends the bankruptcy court erred in denying his motion for
24   reconsideration by failing to consider evidence of Lipton's prior conviction. As stated, this
25   argument is unavailing, and in any case the bankruptcy court did not err in granting the
26   Trustee's motion to compromise in the first place. The bankruptcy court therefore did not abuse
27   its discretion in denying McCoy's motion for reconsideration. Because this order concludes

8

McCoy failed to show reversible error on any basis, it does not address the Trustee's and Lipton's additional arguments about McCoy's standing to object to the compromise.

## CONCLUSION

The bankruptcy court's decision is **AFFIRMED** as to both its order granting the Trustee's motion to compromise and its order denying McCoy's motion for reconsideration. The Trustee's request for judicial notice is not relied upon in this order and **DENIED AS MOOT**. Judgment shall follow.

**IT IS SO ORDERED.**

Dated: March 17, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE